# The Consolidated Coal Company of St. Louis
## v.
## Andrew Young, Administrator.

*Master and Servant—Personal Injury—Negligence of Mine Owner—Failure to Prop—Vice Principal—Contributory Negligence—Assumption of Risk—Evidence.*

In an action to recover for the death of an employe of a coal company through its alleged negligence in failing to prop the roof of its mine, this court holds that the evidence does not show that deceased was directed by any authorized agent of the company to work in the place where the accident happened, and that it was his duty to call for props when he considered the same necessary to his safety.

[Opinion filed June 15, 1890.]

Appeal from the Circuit Court of St. Clair County; the Hon. William H. Snyder, Judge, presiding.

Mr. Charles W. Thomas, for appellant.

Messrs. E. L. Thomas and Dill & Schaefer, for appellee.

Reeves, J.  Caspar Larcher was employed as a miner in the mine of appellant.  In this mine mining machines were used; also persons whose labor consisted of drilling holes and blasting, or shooting the coal down after it was mined by the machines, and still others to load the coal so mined and blasted into boxes to be transported to the shaft bottom.  There were persons employed, some whose labor was devoted to the transportation of the coal, after it was loaded in the boxes, to the shaft bottom, and others who were engaged in building roadways, and setting up props to prevent clod, rock and other overhanging material from falling.  Over all these employes there was a pit boss, who had such power over the other employes as made him, as to the others, the representative of the common

master, appellant. Larcher was engaged in loading the coal into boxes, after it was mined and blasted. While engaged in this work he was killed by the falling of a clod, and this action was brought by his administrator to recover damages for his death.

It is alleged that the clod that fell and crushed Larcher was not propped up by props, and that the pit boss, knowing that the clod was not propped, and knowing it was dangerous, nevertheless directed Larcher to continue his labor under the clod, and represented to Larcher that there was no danger in so working, that the clod would not fall, etc.

It must be conceded from the evidence found in this record that the pit boss did not personally direct Larcher to work at the place where he was when killed, and did not direct him to continue such work after it was begun. It is, however, contended that such direction was given by the " shooter," the man whose duty it was to shoot down the coal after it had been mined by the machines, and that the " shooter " stood in the place of the pit boss in his absence. We fail to find any sufficient support for this position in the evidence. Schilling, who was working with Larcher, says they were sent into the place where Larcher was afterward killed by the " shooter," but it is not shown anywhere in the evidence that the " shooter " had the direction or control of the men in any particular, in the absence of the pit boss.

It appears that Schilling and Larcher left the room where they were at work in the morning, and went into the room where Larcher was killed, because they wanted to load out of a full place. Schilling says he and Larcher knew there was a clod there, but they did not believe it was dangerous. They sounded it and it did not sound loose. The timberman also sounded it. The timberman said, " It is a wonder that clod stays up that way." After the timberman left, Larcher sounded the roof and found it all right. Larcher was a coal miner by trade, of many years' experience. He was a careful man, and he sounded the roof often, says Schilling. He also says the pit boss came where they were at work, and sounded the roof, but said nothing. The pit boss testified that he was

Consolidated Coal Co. of St. Louis v. Young.

in the room where Larcher was afterward killed, in the morning of the same day. Larcher and Schilling were not there then. In the afternoon, in making the rounds, he found them there at work. He says: "I don't know how they came to leave the place where they were working in the morning. I asked Larcher, and he said there was somebody else loading there, and he thought they ought to have the right to load out of a full place too. I neither told him to stay or not to stay. I left him his choice. When I went in there I sounded the roof, as was my custom wherever I went. I found it solid. I did not know then there was clod there, but I suspected it, and that is the reason I tried it. Larcher said to me that it was all right." Schilling testified: "In order to find out about clod, you generally sound it with a pick, and you can tell whether it is loose or not. When it is about to fall it sounds loose, and if not, it sounds solid. You can not tell the difference between clod and rock. Larcher and I both knew there was clod there. The timberman was in twice, but we did not ask him to put up props." The pit boss testified: "It was the duty of the men, when they wanted props, to let the timberman know."

This is the substance of the testimony upon the material points. As already stated, it fails to show any direction by the pit boss to Larcher to work where he was killed. Even if we concede that he was directed to go there by the "shooter," in order to bind the master it must be shown that the "shooter" had the authority from the master to direct and control Larcher. No attempt was made to show any such authority in the "shooter."

Larcher was an experienced miner and able to detect the necessity of props if any were needed, and in such case it was his duty to call upon the timberman for props. He made no such demand. Evidently Larcher thought the place safe. The usual tests failed to show that the clod was loose or loosening. Under the facts shown, we do not see how a recovery in this case can possibly be maintained. The judgment of the Circuit Court is reversed.

*Judgment reversed.*